# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-1374
Filed May 27, 2026

————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Daniel Jeffrey Gray,**
Defendant–Appellant.

————————

Appeal from the Iowa District Court for Warren County,
The Honorable Mark F. Schlenker, Judge.

————————

**AFFIRMED**

————————

Randall L. Jackson of Ellis Law Offices, P.C., Indianola,
attorney for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, attorneys for appellee.

————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Schumacher, P.J.

**SCHUMACHER, Presiding Judge.**

Daniel Gray challenges the district court's denial of his motion to suppress evidence. Gray was convicted of operating while under the influence in violation of Iowa Code section 321J.2(2)(a) (2025). On appeal, he asserts law enforcement lacked probable cause and reasonable suspicion that a traffic violation was occurring. Upon our review, we affirm.

## I. Background Facts & Proceedings.

In January 2025, an Indianola law enforcement official, Officer Thomas, was seated in his patrol car and observed a vehicle drive by with a left registration plate light out around 2:00 a.m. The vehicle entered a gas station across the street from Officer Thomas. Officer Thomas then observed the vehicle using binoculars.

The vehicle left the gas station, and rather than returning to the main road, it drove down a side street and turned onto another street labeled "dead end." It then turned off the dead-end street into connected commercial parking lots. Officer Thomas followed the car into the parking lot of an auto parts store and turned his patrol vehicle headlights off to confirm one of the car's plate lights was out. Officer Thomas was able to confirm the left plate light was out and determined the plate was partially illegible. He then initiated a traffic stop.

Officer Thomas determined the driver of the vehicle was Gray, who appeared to be intoxicated. There were also alcohol containers within the car. Gray was transported to jail and charged with operating while intoxicated.

Gray moved to suppress the evidence obtained from the traffic stop, arguing law enforcement lacked "reasonable grounds or probable cause" to commence the stop. After a hearing, the district court denied the motion.

The parties stipulated to a trial on the minutes of testimony, and Gray was convicted of the charge. Gray now appeals, asserting the denial of the motion to suppress violated his constitutional rights.

## II.   Analysis.

We review challenges to a ruling on a motion to suppress "de novo because such claims implicate constitutional issues." *State v. Baker*, 925 N.W.2d 602, 609 (Iowa 2019). "We make an independent evaluation of the totality of the circumstances as shown by the entire record. We give deference to the district court's factual findings, but they do not bind us." *Id.* (cleaned up).

Gray asserts the stop of his vehicle violated his right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. *See State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). When law enforcement initiates a traffic stop, that stop "is constitutional when supported by probable cause or reasonable suspicion of a crime." *State v. Mumford*, 14 N.W.3d 346, 350 (Iowa 2024) (cleaned up). "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and the detained person committed or is committing it." *Id.* (cleaned up). Reasonable suspicion exists when an officer can "point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (cleaned up). An officer is required "to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (cleaned up). "When a peace officer observes any type of traffic offense, the violation

establishes both probable cause to stop the vehicle and reasonable suspicion to investigate." *McIver*, 858 N.W.2d at 702.

First, Gray asserts that because only one of his license plate lights was out and his plate was partially illuminated, it did not violate Iowa Code section 321.388, thus precluding probable cause or reasonable suspicion for the stop. Section 321.388's relevant language states:

> Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. When the rear registration plate is illuminated by an electric lamp other than the required lamp, the two lamps shall be turned on or off only by the same control switch at all times when the headlamps are lighted.

Here, Officer Thomas's testimony indicated that Gray's license plate was not fully illuminated from thirty feet when he first observed Gray's vehicle.[1] And after that initial observation, the officer used his binoculars to confirm the lack of illumination. Further, the officer turned off his own headlights to confirm that one of the lights was out and that the plate was illegible prior to initiating the stop.

Gray next asserts that because Officer Thomas confirmed that the video from his dashcam showed he did not observe Gray's "vehicle from within 50 feet when . . . observing the license plate," section 321.388 was not violated. Notwithstanding Officer Thomas's testimony about his prior observation within thirty feet, where he did not definitively state the plate was illegible, "it stands to reason" that because the plate was not fully

---

[1] At the hearing on the motion to suppress, Officer Thomas testified Gray's vehicle was "[t]hree feet" in front of him when he first observed the license-plate lighting. It appears the parties and the district court understood this was a verbal mistake and he meant to say "thirty feet."

illuminated, it was not legible. *See State v. Ohland*, No. 19-1557, 2020 WL 7021717, at *3 (Iowa Ct. App. Nov. 30, 2020) ("[I]f the left side of the plate was not fully visible, it stands to reason that it was likewise not clearly legible—the visibility of the plate affects its legibility."). Here, Officer Thomas's report stated that the "vehicle's driver's side plate light was out and the rear registration plate was not rendered visible from a distance of 50 feet to the rear." *See id.* n.2 (determining that lack of visibility creates a strong inference of lack of legibility because "[a] license plate cannot be read or deciphered if it cannot be seen").

Also, Gray's argument that because the plate was partially illuminated there was no probable cause for the stop is contrary to our supreme court precedent. *See State v. Lyon*, 862 N.W.2d 391, 398 (Iowa 2015) ("[T]he statute may be violated if there is no illumination of the license plate . . . or if the illumination, though present, is so weak that the license plate is not clearly legible from a distance of fifty feet.").

Gray further asserts that because Officer Thomas's statements concerning his initial observation of the license plate were not reflected in his police report, the court should not have given weight to his testimony. The State contends that Officer Thomas would have had no reason to follow Gray from the gas station if he had not seen his unilluminated license plate, and that adds credibility to his testimony. We need not reweigh Officer Thomas's credibility, as we defer to the district court's factual findings. *See Baker*, 925 N.W.2d at 609; *State v. Lacey*, 968 N.W.2d 792, 803 (Iowa 2021) (reiterating that a factfinder is "free to reject certain evidence, and credit other evidence" (citation omitted)).

Because the plate was not legible from fifty feet, Officer Thomas had probable cause to believe a traffic violation was occurring and reasonable suspicion to investigate the violation. *See McIver*, 858 N.W.2d at 702.[2]

Lastly, Gray contends that the district court improperly found that his decision to drive down a "dead end" street behind closed businesses instead of a main road in the early morning hours provided reasonable suspicion of criminal activity. Gray cites *State v. Haviland*, where our supreme court found that a defendant driving out of a closed business area when police approached did not give rise to reasonable suspicion, to support his argument. *See* 532 N.W.2d 767, 768–70 (Iowa 1995). One of the reasons the supreme court provided in making this determination in *Haviland* was that the law enforcement officers were unable to "articulate something more than the defendant's car pulling out of a private business." *Id.* at 769.

Here, Officer Thomas testified he had previously observed that one of Gray's license plate lights was out and that the plate was not legible within fifty feet. Such provides reasonable suspicion that a traffic offense was being committed, and not "an inchoate and unparticularized suspicion." *Id.* at 768; *see State v. Sinclair*, No. 24-0867, 2025 WL 1704968, at *3 (Iowa Ct. App. June 18, 2025) (distinguishing *Haviland* because "the officer [in

---

[2] Because of our disposition on this issue, we need not address the State's alternative argument that the stop was permissible based on Gray violating Iowa Code section 321.387, titled "Rear lamps." That section states, in part: "All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall be replaced with equivalent equipment." The dispute regarding that section is whether the language is meant to include license plate lights or is exclusive to taillights, as the other sentence of the section refers to a "lighted rear lamp or lamps, exhibiting a red light." "[B]ecause we find the evidence sufficient to show a violation of section 321.388, we do not address whether section 321.387 applies to all lamps or is limited to 'rear lamps.'" *Ohland*, 2020 WL 7021717, at *3 n.4.

*Haviland*] who stopped the vehicle 'was not investigating a crime,' 'had no information respecting the car or its occupants,' and 'had not been informed of any recent suspicious activities in that area,'" whereas in *Sinclair*, law enforcement responded to a report of alleged criminal activity (quoting *Haviland*, 532 N.W.2d at 769)).

We agree with the district court that Gray's furtive actions as law enforcement followed him provided reasonable suspicion to stop the car and investigate. *See Haviland*, 532 N.W.2d at 769 (citing *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993) (where the "defendant's 'furtive action' of pulling out of an area of a private business as the police approached [was] significant in concluding there was reasonable suspicion to stop [the] defendant's car.")).

## III.   Conclusion.

Accordingly, we affirm the district court's denial of Gray's motion to suppress.

**AFFIRMED.**